# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 20, 2008

Charles R. Fulbruge III
Clerk

No. 06-61142

CAROLYN HARRIS, AND OTHER UNKNOWN PARTIES IN INTEREST

Plaintiff-Appellant

v.

TRUSTMARK NATIONAL BANK; TRUSTMARK NATIONAL BANK PENSION PLAN; TRUSTMARK NATIONAL BANK PROFIT SHARING PLAN; TRUSTMARK NATIONAL BANK 401(K) PLAN; TRUSTMARK BANK AND/OR TRUSTMARK CORPORATION AND/OR AGENT(S); TRUSTMARK CORPORATION

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Mississippi
4:01-CV-83

Before GARWOOD, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-appellants, Carolyn Harris, et al., appeal the district court's grant of summary judgment in favor of defendants-appellants, Trustmark National Bank, Trustmark National Bank Pension Plan, Trustmark National Bank Profit Sharing Plan, Trustmark National Bank 401(k) Plan, Trustmark

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Bank and/or Trustmark Corporation and/or agent(s), and Trustmark Corporation (collectively, Trustmark). Plaintiffs are former employees of Canton Exchange Bank (Canton) and Rankin County Bank (Rankin) who became Trustmark employees when Trustmark acquired their former employers in 1983 and 1987, respectively.[1] They sued Trustmark asserting claims of fraud, misrepresentation, and breach of contract in relation to their retirement plans. The district court granted summary judgment in favor of Trustmark, and dismissed the plaintiffs' claims in their entirety. For the following reasons, we affirm the judgment of the district court.

## FACTS AND PROCEEDINGS BELOW

When Trustmark acquired Rankin and Canton in the 1980s, it retained the Rankin and Canton employee benefit plans for the former employees of the two banks. Thus, Trustmark did not include the former Rankin and Canton employees in both its profit sharing plan and its 401(k) plan (the Trustmark Plans) until the plans were merged in the late 1990s. Rankin employees were excluded from the profit sharing plan from 1987 until 1998, while Canton employees were excluded from both of the Trustmark Plans from 1983 through 1999.

The plaintiffs filed this case in the Circuit Court of Washington County, Mississippi on March 9, 2001 alleging that Trustmark committed fraud,

---

[1] Initially, plaintiffs also included former employees of two other banks, State Guaranty Bank and Brookhaven Bank & Trust, who are currently employed by Trustmark. However, on November 17, 2005, plaintiffs amended their complaint to omit claims of those employees. Thus, the plaintiffs in this case only include former Rankin and Canton employees, and we will not discuss the former employees of State Guaranty Bank and Brookhaven Bank & Trust. The sixteen named plaintiffs in this case include twelve former Canton employees: Carolyn Harris, Jimmy James, Evelyn M. Akins, the Estate of Robert Grant, Dorothy Furr, Henry Douglas Rasberry, Betty Stewart, Debra S. Washington, Linder Fleming, Gloria Nichols, Betty Robinson, Mary Joe Vance-Scott. They also include four former Rankin employees: Carolyn Burnett, Dena A. Childress, Cynthia E. Ingram, and James F. Wright. Plaintiffs also indicate in their brief that other putative class members (former employees of Canton and Rankin) who remain unnamed are plaintiffs as well.

misrepresentation, and breach of contract with regard to the plaintiffs' retirement plans. Plaintiffs allege that Trustmark did not follow through on its promises that it would provide plaintiffs with certain retirement benefits comparable to those of existing Trustmark employees. They claim that before 1998, they should have been provided with the full benefits available from the Trustmark Plans. Plaintiffs base a large portion of their arguments on this appeal on a letter dated February 6, 1986 from Rankin to the Senior Vice President and Personnel Director of Trustmark regarding the employee benefits of the Rankin employees acquired by Trustmark (the Rankin Merger Agreement). In pertinent part, the Rankin Merger Agreement states:

> "Trustmark shall guarantee to the employees of Rankin County Bank benefits under the same or a similar plan not less than those enjoyed by such employees under the Rankin County Bank plan. Trustmark agrees to make contributions to the Rankin County Bank plan on a comparable basis to contributions made under the Trustmark plan if they have not established a similar plan."

On April 11, 2001, Trustmark removed this action to the federal district court based on Employee Retirement Income Security Act (ERISA) preemption. On April 20, 2001, plaintiffs filed a motion to remand the case, which the district court denied on March 7, 2002. On October 1, 2003, plaintiffs filed an Amended Complaint in which they asserted that they were bringing a class action suit involving approximately 600 class members. The proposed or "putative" class consisted of former employees of various banks acquired by Trustmark since 1983. On April 22, 2004, the district court entered an order granting the plaintiffs' Motion to Substitute Class Representative, which made Carolyn Harris the plaintiffs' putative class representative. On July 1, 2004, the district court entered a Memorandum Opinion and Order finding that plaintiffs did not exhaust their administrative remedies as required by ERISA and staying the case pending exhaustion of administrative remedies. At this time the district

court also denied the plaintiffs' request to designate them as representatives of a class for exhaustion purposes.

On August 24, 2004, twenty-one Trustmark employees, including the four former Rankin employees and twelve former Canton employees, submitted their claims for benefits to James R.E. Brown, Assistant Vice President and Benefits Manager for Trustmark (the Plan Administrator).[2]  Plaintiffs alleged that Trustmark committed fraud and made misrepresentations in relation to the Trustmark Plans.  Their initial complaint to the Plan Administrator indicated that this was "not a merger/acquisition case nor [was] this a case involving a simple miscalculation of [the plaintiffs'] plan."  Plaintiffs asserted that Trustmark misrepresented the value of their retirement plans for years, and alleged that Trustmark violated ERISA by excluding them from the Trustmark Plans.  They sought compensation for lost profit sharing benefits that they would have received had they participated in the Trustmark Plans.

The Plan Administrator issued a Notice of Denial of the plaintiffs' claims on January 14, 2005.  He attached the Rankin Merger Agreement to his decision. He explained that Canton and Rankin executives insisted, as a condition of Trustmark's acquisitions of the banks, that their employees keep their existing retirement plans rather than being placed in the Trustmark Plans.  Thus, he explained that the former Canton and Rankin employees were not entitled to the requested profit sharing benefits.  The Plan Administrator emphasized that there was no evidence of the alleged misrepresentations that formed the basis of the plaintiffs' claims.  Furthermore, he found that the plaintiffs' alleged injuries had no causal connection to reasonable reliance on the alleged misrepresentations.  The plaintiffs appealed the Plan Administrator's decision

---

[2] The sixteen named plaintiffs listed in footnote 1, supra, exhausted their administrative remedies (along with five others who are not a party to this action: four former employees of State Guaranty Bank and one former employee of Brookhaven Bank & Trust).

on March 11, 2005. The Plan Administrator affirmed his previous denial of benefits on June 17, 2005. Thus, the plaintiffs had exhausted their administrative remedies, and the district court lifted the stay on the district court proceedings on August 5, 2005.

On November 14, 2005, plaintiffs filed a Motion to Certify Class Action requesting that the district court certify a class of plaintiffs consisting of those who became Trustmark employees by virtue of Trustmark's acquisition of Rankin and Canton. In the alternative, the plaintiffs requested that the court divide the plaintiffs into two classes consisting of only former Rankin and only former Canton employees. The district court never addressed the plaintiffs' request to certify a class, even in its order granting summary judgment in favor of Trustmark; plaintiffs make no complaint in that respect on this appeal.

Trustmark filed a Motion for Summary Judgment in the district court on February 10, 2006, and the plaintiffs filed a Cross-Motion for Summary Judgment on June 2, 2006. On September 29, 2006, the district court entered an order granting summary judgment in favor of Trustmark "as to the claims of all plaintiffs," and dismissed the case. It dismissed with prejudice the claims of the sixteen named plaintiffs who exhausted their administrative remedies (those named in the fourth and fifth sentences of note 1 supra), while dismissing without prejudice the claims of any other plaintiffs who did not present their claims before the Plan Administrator. On October 23, 2006, plaintiffs timely filed a notice of appeal of the district court's judgment.

DISCUSSION

We limit our discussion to the issues raised on appeal: whether the district court erred by refusing to remand the case to the Plan Administrator to determine whether Trustmark complied with the Rankin Merger Agreement; whether the district court erred in determining that plaintiffs do not have substantive rights under ERISA or applicable Treasury regulations, and in

failing to remand the case to the Plan Administrator to determine whether Trustmark violated these rights; whether the district court applied the proper standard of review; and whether the district court erred in dismissing without prejudice the claims of plaintiffs who did not present their claims before the Plan Administrator. For the reasons stated below, we affirm the judgment of the district court.

A.    The Rankin Merger Agreement.

Plaintiffs argue that the district court should have remanded this case to the Plan Administrator to allow him to determine whether Trustmark complied with the Rankin Merger Agreement. The Rankin Merger Agreement states that Trustmark will "guarantee to the employees of Rankin County Bank benefits under the same or a similar plan not less than those enjoyed by such employees under the Rankin County Bank plan," and that "Trustmark agrees to make contributions to the Rankin County Bank plan on a comparable basis to contributions made under the Trustmark plan if they have not established a similar plan." Plaintiffs argue that Trustmark did not comply with the requirements of this agreement.

Trustmark suggests that a district court's decision regarding whether to remand a case for administrative proceedings is reviewed for abuse of discretion, even when the remand decision is made in conjunction with a grant or denial of summary judgment. See Bordelon v. Barnhart, 161 Fed. Appx. 348, 353 (5th Cir. 2005) (reviewing for abuse of discretion a district court's decision to remand a case to the Social Security Commission). However, this court reviews a district court's grant of summary judgment de novo. Plyant v. Hartford Life and Accident Ins. Co., 497 F.3d 536, 538 (5th Cir. 2007). We cannot find and the parties do not cite a published opinion indicating how this court reviews a district court's decision not to remand a case for administrative proceedings. However, we need not decide this issue at this time because the record does not

reflect that plaintiffs requested the district court to remand for further administrative proceedings.

A review of the record reveals that plaintiffs did not ask the district court to remand their case for further administrative proceedings to determine whether Trustmark complied with the Rankin Merger Agreement. None of the documents filed by plaintiffs in the district court mention even the possibility of remanding the case. Also, although the district court suggests that it may have remanded the issue if the plaintiffs had not been provided with a copy of the Rankin Merger Agreement in time to raise it before the Plan Administrator, the district court opinion does not indicate that plaintiffs requested remand. Because plaintiffs did not request that the district court remand the case, they cannot now raise this argument on appeal absent "exceptional circumstances." Castillo v. Barnhart, 325 F.3d 550, 553 (5th Cir. 2003) (quoting Kinash v. Callahan, 129 F.3d 736, 739 n.10 (5th Cir. 1997)) (indicating that in "exceptional circumstances . . . the court 'may, in the interests of justice, review an issue that was not raised in the district court'"). As the plaintiffs do not establish any "exceptional circumstances" that prevented them from arguing in the district court that their case should be remanded on the Rankin Merger Agreement issue, they cannot now successfully argue that their case should be remanded to the Plan Administrator.

Furthermore, plaintiffs cannot return to administrative proceedings because they did not raise their Rankin Merger Agreement argument before the Plan Administrator. An ERISA plaintiff must exhaust his remedies before pursuing a claim in federal court. Denton v. First Nat'l Bank of Waco, Texas, 765 F.2d 1295, 1303 (5th Cir. 1985) ("Congress, in enacting ERISA, clearly wanted potential plaintiffs to first exhaust their administrative remedies before resorting to the federal courts."). One of the "primary purposes" of the exhaustion requirement is to "assure that any judicial review of fiduciary action

(or inaction) is made under the arbitrary and capricious standard, not de novo." Id. at 1300. A plaintiff has not exhausted his administrative remedies on an issue if he fails to raise it before the plan administrator. Thus, a federal court should not address the issue because it does not have the opportunity to review the plan administrator's resolution of the issue under an arbitrary and capricious standard. See Pub. Citizen, Inc. v. United States Envtl. Prot. Agency, 343 F.3d 449, 461 (5th Cir. 2003) (holding that in the context of agency law, "[a]bsent exceptional circumstances, a party cannot judicially challenge agency action on grounds not presented to the agency at the appropriate time during the administrative proceeding"); but see Jordan v. Fed. Express Corp., 914 F. Supp. 1180, 1189 (W.D. Pa. 1996) (holding that "ERISA requires only claim exhaustion and not 'issue' or 'theory' exhaustion of administrative remedies"), aff'd in part, rev'd in part on other grounds, 116 F.3d 1005 (3d. Cir. 1997).

Furthermore, after a plaintiff has exhausted his remedies, this court generally should not remand a case to a plan administrator absent "special circumstances." Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 302 n.13 (5th Cir. 1999) (en banc). Each party should make its record with the Plan Administrator before the case comes to federal court; allowing parties a second opportunity to develop the record dilutes their incentive to develop the record at the first opportunity. Id.; see also Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps., 215 F.3d 475, 479 n.4 (5th Cir. 2000) (indicating that one of the purposes of the exhaustion requirement under ERISA is "providing a clear record of administrative action if litigation ensues"). Furthermore, allowing a case to "oscillate" between courts and administrative proceedings prolongs the case. Vega, 188 F.3d at 302 n.13. For these reasons, absent special or unusual circumstances, a district court need not remand an issue to a plan administrator if the plaintiff did not take the opportunity to raise the issue in administrative proceedings. See id. As an ERISA "claimant only has an opportunity to make

his record before he files suit in federal court," plaintiffs were required to present their argument that Trustmark violated the Rankin Merger Agreement to the Plan Administrator during the administrative proceedings.  Id.

Plaintiffs did not raise the Rankin Merger Agreement argument before the Plan Administrator and have not established any special circumstances that would warrant the district court remanding the issue.  Id.  A review of the plaintiffs' original complaint and their Appeal of Notice of Denial before the Plan Administrator reveals that plaintiffs did not make any arguments regarding the Rankin Merger Agreement to the Plan Administrator.  In their appeal to the Plan Administrator, they argued that "Trustmark agreed to make and/or keep the retirement benefits of Plaintiff and the plaintiff class equal to those of its other employees," and noted that "Trustmark totally ignored the issues relating to the promise of equality of the respective plans."  They also noted Trustmark's alleged intention to keep the retirement plans "equal" in a few other instances.  However, the plaintiffs never mentioned the Rankin Merger Agreement.  They even explicitly denied that the case involved a breach of any merger agreement by stating that "[t]he question presented is not whether Trustmark breached any of the merger agreements, but rather the question is whether Trustmark complied with its fiduciary duty owed to claimants and whether Trustmark has complied with applicable [Internal Revenue Service] and ERISA rules."  Thus, despite their vague references to Trustmark's alleged promise to keep the retirement plans of its employees equal, plaintiffs did not raise the Rankin Merger Agreement issue before the Plan Administrator.

Furthermore, plaintiffs cite no special circumstances that prevented them from making this argument to the Plan Administrator.  They had ample opportunity to complain about this issue because the Plan Administrator attached a copy of the Rankin Merger Agreement to his Notice of Denial on January 14, 2005, and plaintiffs had the opportunity to file an appeal of this

decision with the Plan Administrator, which they did on March 11, 2005. Therefore, they should not be able to argue at this point that their case should be remanded.

Because plaintiffs did not request that the district court remand their case, did not argue to the Plan Administrator that Trustmark violated the Rankin Merger Agreement, and did not cite any special circumstances for why the case should be remanded now, under either the de novo or abuse of discretion standard of review, the district court did not err in failing to remand the case to the Plan Administrator on the Rankin Merger Agreement issue.

B.    ERISA and Treasury Regulation Claims

The plaintiffs' second argument on appeal appears to be that the district court erred in holding that the Trustmark profit sharing plan did not violate ERISA or applicable Treasury regulations and that it should have remanded this issue for administrative proceedings instead of granting summary judgment for Trustmark. This court reviews a district court's grant of summary judgment de novo. Plyant, 497 F.3d at 538.

Plaintiffs first argue that this case should be remanded to administrative proceedings to determine whether the exclusion of the plaintiffs from the profit sharing plan constituted discrimination by Trustmark in favor of highly compensated employees. As with the previous issue, the plaintiffs did not ask the district court to remand this issue to administrative proceedings, and do not cite "exceptional circumstances" that would warrant remanding the issue. See Castillo, 325 F.3d at 553. Therefore, plaintiffs cannot now successfully seek remand on appeal.

It appears that plaintiffs also dispute the district court's holdings that the Trustmark Plans did not violate ERISA or Treasury regulations and that

plaintiffs do not have substantive rights under these rules.[3]  First, plaintiffs suggest that under certain Treasury regulations, all employees must be provided with the opportunity to participate in the Trustmark Plans.  Plaintiffs also contend that the Trustmark Plans discriminate against highly compensated employees, which violates Treasury regulations that relate to tax-exempt entities.  They suggest that because the plans indicate that they should meet the requirements of ERISA, plaintiffs should be permitted to pursue a private cause of action against Trustmark based on their allegations.

The district court indicated that it was "highly likely" that the Fifth Circuit would find that Trustmark did not violate ERISA by distinguishing between Trustmark employees and former employees of Canton and Rankin in establishing their ERISA plan.  It also held that plaintiffs did not have a private cause of action based upon allegations that Trustmark's plan discriminated in favor of highly compensated employees.

Plaintiffs' argument that they have substantive rights under ERISA is without merit.  Under Seventh Circuit precedent, participation requirements in an ERISA plan only affect the plan's income tax treatment under the Internal Revenue Code (IRC).  Reklau v. Merchants Nat. Corp., 808 F.2d 628, 631 (7th Cir. 1986) (holding that IRC § 401 did not create any substantive rights that could be enforced by an individual as a participant or beneficiary of a tax qualified pension plan).  Furthermore, this court has cited Reklau for the proposition that ERISA does not create a private cause of action for violations of Treasury regulations.  Tulley v. Ethyl Corp., 861 F.2d 120, 125 (5th Cir. 1988) (indicating that the Fifth Circuit "do[es] not incorporate the Treasury regulations into ERISA to create substantive rights"); see also Abraham v. Exxon Corp., 85 F.3d 1126, 1131 (5th Cir. 1996) (indicating that "the Treasury

---

[3] Although plaintiffs assert that Trustmark has violated ERISA and Treasury regulations, they do not specify or cite the statutes or regulations that have allegedly been violated.

regulations do not create substantive rights under ERISA that would permit the relief [the plaintiff] requests"). Thus, the Treasury regulations do not create substantive rights as plaintiffs suggest.

In Abraham, this court addressed an argument similar to that raised by the plaintiffs. In that case, the plaintiffs were "leased" or "special agreement" employees of Exxon who worked at Exxon facilities but were employed by unaffiliated firms that leased services to Exxon. Abraham, 85 F.3d at 1128. Plaintiffs were excluded from Exxon's ERISA plan, and sued Exxon seeking, inter alia, a determination that they were entitled to benefits from the plan. Id. Plaintiffs contended that the exclusion of the leased employees from the plan was discriminatory and violated the minimum participation and coverage requirements of ERISA and certain Treasury regulations. Id. at 1130. This court indicated that the Treasury regulations "purport to do no more than determine whether a plan is a qualified tax plan." Id. at 1131. Thus, it held that "[f]ailure to meet the requirements of those regulations results in the loss of a beneficial tax status; it does not permit a court to rewrite the plan to include additional employees." Id. It also held that the Treasury regulations do not create substantive rights under ERISA that would allow the court to award the plaintiffs their requested relief. Id.

Like the plaintiffs in Abraham, the plaintiffs in this case suggest that they have substantive rights to force Trustmark to compensate them for their exclusion from the Trustmark Plans based on Treasury regulations and ERISA provisions. However, Abraham clearly indicates that the Treasury regulations do not create substantive rights, and that failure of the Trustmark Plans to conform to Treasury regulations would simply result in the loss of a beneficial tax status, not mandatory inclusion of plaintiffs in the Trustmark Plans. Id.

Plaintiffs argue that Crouch v. Mo-Kan Iron Workers Welfare Fund, 740 F.2d 805 (10th Cir. 1984) supports their position that they should have a private

cause of action for damages due to their exclusion from the Trustmark Plans and Trustmark's discrimination in favor of highly compensated employees. At issue in Crouch was an ERISA plan stating:

> "The Plan adopted by the Trustees shall be such as will qualify for approval by the U.S. Treasury Department, Internal Revenue Service and Department of Labor, and as will continue as a qualified plan. The Trustees are authorized to make whatever applications are necessary with the said Internal Revenue Service and Department of Labor to receive and maintain approval of the plan."
> Id. at 808.

The Tenth Circuit held that because the employer's plan stated that it should be construed to meet ERISA requirements, an employee could force her employer to include her as a participant in the plan. Id. at 808-09. If she could not maintain a private cause of action under ERISA to do this, the plan would not meet the qualification requirements of ERISA. Id. at 809.

However, in Abraham, the Fifth Circuit declined to apply Crouch. 85 F.3d at 1131. This court held that absent an "explicit provision declaring that [a plan] was to be construed to meet the requirements of an ERISA plan . . . a court is not entitled to look to Treasury regulations to determine employee eligibility for participation in an ERISA plan." Id. See also Bronk v. Mountain States Telephone and Telegraph, Inc., 140 F.3d 1335, 1338-39 (10th Cir. 1998) (citing Abraham, and limiting Crouch to its facts, when a plan explicitly states that it must comply with ERISA, the Internal Revenue Code, and Treasury regulations). Under Abraham, when the plan in question does not explicitly state that it should comply with ERISA like the plan in Crouch did, the plan does not create substantive rights. 85 F.3d at 1131.

Crouch does not apply to this case as plaintiffs cite no language from the Trustmark Plans indicating that the plans must comply with ERISA. Unlike the language from the plan at issue in Crouch, the provisions that plaintiffs quote from the Trustmark profit sharing plan and a resolution by the Trustmark board

of directors do not qualify as "explicit provision[s] declaring that [the plans are] to be construed to meet the requirements of an ERISA plan." Abraham, 85 F.3d at 1131. The Trustmark profit sharing plan that became effective January 1, 1984 indicates that "in order to comply with the Employee Retirement Income Security Act of 1974, and to effect certain changes in the Plan, the Sponsor amended, restated and continued the Plan effective January 1, 1976." Furthermore, a Resolution by the Board of Directors of Trustmark National Bank, from December 13, 1988 stated in its introduction:

> "WHEREAS, such [of Trustmark's retirement plans and trusts for the benefit of its employees] are intended to be qualified plans and trusts under the Internal Revenue Code; and
> WHEREAS, Trustmark now finds it advisable to amend said plans and trusts in order to comply with changes in the law caused by the Tax Reform Act of 1986 and other changes to the Internal Revenue Code and regulations."

Unlike the plan at issue in Crouch, neither of these provisions explicitly declare that the Trustmark Plans must continue as qualified ERISA plans. They state that the plans are intended to qualify as ERISA plans, but do not indicate that the plans must always satisfy ERISA. Thus, the Trustmark Plans do not fall into the limited category of retirements plans that create substantive rights under Crouch.

Moreover, as the Plan Administrator discussed in his denial of the plaintiffs' claims on January 14, 2005, it was determined as part of the merger agreements that Canton and Rankin employees would keep the plans that they held with their former employers, and would not take part in the Trustmark Plans.[4] Thus, the plaintiffs also do not qualify for relief as they were excluded from the Trustmark plans under previous agreements negotiated at arm's length, and cannot now insist that they should have been included in certain

---

[4] Neither party addresses this fact, but plaintiffs do not deny its validity.

Trustmark Plans despite the fact that their former employers specifically negotiated to exclude them from the plans.

For the reasons stated above, we hold that the district court did not err in granting summary judgment for Trustmark because plaintiffs are not entitled to any relief under ERISA or Treasury regulations, and they do not have substantive rights to enforce the Trustmark Plans.

C.    Standard of Review

The plaintiffs also appear to argue that the district court applied an improper standard of review when analyzing the Plan Administrator's decision. First, they argue that the district court should have applied a de novo standard of review instead of abuse of discretion to determine whether plaintiffs failed to raise their argument regarding the Rankin Merger Agreement before the Plan Administrator.  They also contend that whether the Plan Administrator was required to include the former Rankin and Canton employees in the Trustmark profit sharing plan is a question of law, which should be reviewed de novo instead of under an arbitrary and capricious standard.  The district court's choice of which standard of review should apply when it reviews the conclusions of a Plan Administrator is a legal issue.  This court reviews legal issues de novo. Carbajal-Gonzalez v. I.N.S., 78 F.3d 194, 197 (5th Cir. 1996).

The district court concluded that in their administrative proceedings, plaintiffs did not allege that Trustmark breached the Rankin Merger Agreement. As Trustmark notes, the district court did not apply an abuse of discretion standard in so determining because it did not rely on any conclusions of the Plan Administrator in reaching that decision.  Thus, it applied a de novo standard of review as it based this decision on a review of the plaintiffs' administrative complaint and their administrative appeal.

The district court does not appear to have applied an abuse of discretion standard when determining whether Trustmark was required to include the

15

former Rankin and Canton employees working for Trustmark in its profit sharing plan.

The district court did indicate that it was "limited to a determination of whether the [Plan] Administrator abused his discretion" because the Trustmark Plans indicate that deference should be given to the Plan Administrator. It also stated in relation to plaintiffs' Rankin Merger Agreement argument that "the crucial point in this case is that the decisions made by the Plan Administrator regarding benefits were consistent with one arguable interpretation of a rather complex plan." It concluded that the Plan Administrator was entitled to "considerable deference" and that plaintiffs failed to demonstrate that he abused his discretion by concluding that they were not entitled to relief.

However, after making these findings, the district court moved on to the other issues raised by the plaintiffs, including whether ERISA bars the exclusion of Rankin and Canton employees from the Trustmark profit sharing plan. In discussing this issue, the district court did not refer to any standard of review. Unlike in its discussion of the previous issues, it also did not mention the Plan Administrator's decision or reasoning. It simply analyzed the case law. Thus, the district court did not review whether ERISA barred exclusion of plaintiffs from the Trustmark profitsharing plan for abuse of discretion, and seems to have applied de novo review to that question.

For the foregoing reasons, we hold that the district court did not apply improper standards of review in determining whether plaintiffs argued to the district court that Trustmark breached the Rankin Merger Agreement, and whether ERISA bars them from being excluded from the Trustmark profit sharing plan.

D. Plaintiffs Who Did Not Exhaust Their Administrative Remedies

Plaintiffs claim that the district court erred in dismissing without prejudice the claims of plaintiffs who did not exhaust their administrative

remedies. First, they suggest that exhaustion of administrative remedies by a class representative constitutes exhaustion for all proposed class members. In the alternative, they suggest that it would be futile for the plaintiffs who did not exhaust their remedies to attempt to exhaust them as Trustmark has already determined that the former employees of Rankin and Canton were properly excluded from its profit sharing plan. They also contend that the proposed class of plaintiffs has exhausted its administrative remedies because some former Canton employees submitted a questionnaire to Trustmark asking why they could not participate in the profit sharing plan. Finally, they suggest that the proposed class was denied meaningful access to administrative procedures because Trustmark denied their request to participate in the profit sharing plan, but did not provide any instructions as to how to appeal this denial. This court reviews for abuse of discretion a district court's decision regarding whether plaintiffs have exhausted their administrative remedies under ERISA and can proceed with a lawsuit. Hall v. Nat'l Gypsum Co., 105 F.3d 225, 231 (5th Cir. 1997).

Plaintiffs argue that exhaustion of remedies by a class representative constitutes exhaustion by all of the proposed class members. However, the cases that plaintiffs cite do not support their argument as they do not indicate that a class representative in an ERISA case can exhaust the remedies of all class members. See Gates v. Cook, 376 F.3d 323, 329-30 (5th Cir. 2004) (holding that under the Prison Litigation Reform Act, the exhaustion of administrative remedies requirement is satisfied for the class if the class representative exhausts his remedies); Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 498 (5th Cir. 1968) (holding that "once an aggrieved person raises a particular issue with the [Equal Employment Opportunity Commission] which he has standing to raise, he may bring an action for himself and the class of persons similarly situated" under the Civil Rights Act of 1964). These cases involve civil rights

actions, so they do not indicate that exhaustion of remedies by class representatives constitutes exhaustion for all class members in an ERISA action such as this one. We could not find and plaintiffs do not cite any Fifth Circuit case holding that this policy applies in ERISA cases. However, the Third Circuit has suggested that the opposite is true, that each purported class member in an ERISA case must exhaust his or her own administrative remedies. Harrow v. Prudential Ins. Co., 279 F.3d 244, 247 n.5 (3d. Cir. 2002) ("We see no merit to plaintiff's argument that exhaustion of administrative remedies should be waived when plaintiff seeks class-wide declaratory relief.").

However, we need not decide this issue at this time as representative exhaustion of administrative remedies was not available to plaintiffs because the district court did not certify a class. The district court granted the plaintiffs' motion to substitute Carolyn Harris as class representative on April 22, 2004, which suggests that it acknowledged plaintiffs as a class. However, the district court denied plaintiffs' request to designate class representatives for exhaustion purposes in a July 2004 order, and did not address plaintiffs' later requests for class certification after they exhausted their administrative remedies. It never defined or specified the parameters of a class. Furthermore, plaintiffs do not claim that a class was certified, do not appeal the district court's failure to certify, and refer to the class as "putative." Thus, plaintiffs' argument that exhaustion of remedies by the class representative constituted exhaustion for the purposes of all class members must fail because the court did not acknowledge or certify a class.

Furthermore, plaintiffs argue that forcing all plaintiffs to exhaust their remedies would be futile. The Fifth Circuit has indicated that under certain circumstances, plaintiffs in an ERISA case are not required to exhaust their remedies if doing so would be futile. Coop. Benefit Adm'rs, Inc. v. Ogden, 367 F.3d 323, 336 n.61 (5th Cir. 2004). However, this court has held that "[a] failure

to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility." McGowin v. Manpower Int'l, Inc., 363 F.3d 556, 559 (5th Cir. 2004). Plaintiffs do not allege that the Plan Administrator or his staff are hostile or biased toward them, so their futility argument must fail.

Plaintiffs argue that under McCarthy v. Madigan, 112 S. Ct. 1081, 1088 (1992), an administrative remedy may be futile if the administrative body has already determined the issue before it. McCarthy involves a Bivens action of a federal prisoner, and does not apply to ERISA.[5] Moreover, many Fifth Circuit cases since McCarthy have discussed the administrative exhaustion requirement under ERISA, and none have found that McCarthy analysis applies. See, e.g., Bourgeois, 215 F.3d at 479. Thus, McCarthy does not appear to apply to exhaustion of administrative remedies in ERISA actions, and this court will not apply the test set forth in that case to determine whether exhaustion is futile in this case.[6]

Plaintiffs also argue that they exhausted their administrative remedies when some former Canton employees submitted a written questionnaire to Trustmark asking why they could not participate in Trustmark's profit sharing plan and requesting that Trustmark allow them to participate. This court has noted in ERISA proceedings that "allowing informal attempts to substitute for the formal claims procedure would frustrate the primary purposes of the exhaustion requirement." Id. at 480 n.14. Thus, by submitting a questionnaire to Trustmark, plaintiffs did not exhaust their remedies. To exhaust their

---

[5] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 91 S. Ct. 1999 (1972).

[6] Trustmark also argues that plaintiffs' futility argument must fail because they did not raise the futility exception in response to Trustmark's motion for summary judgment. Because plaintiffs' futility argument fails for other reasons, we will not address this argument at this time.

remedies, they needed to follow the formal claims procedure as the Rankin and Canton employees did when they filed their claims with the Plan Administrator.

Finally, plaintiffs argue that they were denied meaningful access to the administrative procedure because Trustmark denied their request to participate in the profit sharing plan after they submitted their written questionnaire and did not provide them with instructions as to how to appeal the denial. This court has indicated that a company need not voluntarily provide information on how to appeal this sort of denial, and that it is a plaintiff's responsibility to seek it. Meza v. Gen. Battery Corp., 908 F.2d 1262, 1279 (5th Cir. 1990) (holding that in passing ERISA, Congress did not intend to excuse claimants from exhausting their administrative remedies when they are not informed of the proper administrative procedures); see also McGowin, 363 F.3d at 559 (holding that because a plaintiff in an ERISA case did not request benefit plan documents and was not prevented from obtaining them, she could not assert a successful argument that she was denied meaningful access to the administrative process in defense of her failure to exhaust administrative remedies); Bourgeois, 215 F.3d 475, 480 (5th Cir. 2000) (holding that Meza imposes a duty to seek the information regarding exhaustion of administrative remedies in an ERISA plan even if it has not been made readily available to the plaintiff). As plaintiffs do not argue that they attempted to discover how they could appeal Trustmark's decision regarding their questionnaire, they cannot now assert that they were denied access to administrative proceedings.

Even more, as we determine that the district court did not err in granting summary judgment for Trustmark, it would not be beneficial to potential plaintiffs who did not exhaust their administrative remedies to have their claims dismissed with prejudice as plaintiffs argue should be the case. If we held that exhaustion was not necessary for these plaintiffs, a judgment against them would be rendered on the merits. They could only obtain relief if certiorari in

this case was sought and granted by the Supreme Court and our decision on the merits herein was reversed. Furthermore, it does not prejudice the plaintiffs who did exhaust their administrative remedies that they cannot exhaust the remedies of other potential plaintiffs.

For the reasons stated above, we hold that the district court did not abuse its discretion in dismissing without prejudice the claims of plaintiffs who did not exhaust their administrative remedies.

CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.